Good morning, and may it please the Court, Andrew Kennedy on behalf of John Blackmon. I intend to try to reserve a few minutes for rebuttal. There are two issues before the Court that have been certified by the District Court, but unless this Court prefers otherwise, I intend to address the Sixth Amendment issue primarily and move on to the exhaustion issue if there is time. The key question in this case is whether an attorney may effectuate a valid waiver of the right to testify on behalf of her client when the record indicates that the client was unaware that he had the singular authority to make that decision. Under clearly established federal law, it is clear that a criminal defendant and a criminal defendant alone has the authority to decide whether or not to testify and that any such waiver must be knowing, intelligent, and voluntary. It is true that under this Court's precedent, an attorney may waive that right on the client's behalf and that through inaction, it may be presumed that the client has acceded to that waiver. However, that is merely a presumption. It cannot be a waiver that the client is stuck with even if the client has not knowingly, intelligently— But we have more than that here. I mean, the trial judge said that, you know, he'd been through two trials. He testified at the first. It turns out that he was well aware of the fact that he could testify. And the trial judge said, I was looking at him when his counsel rested and he didn't bat an eye. He wasn't the least bit surprised that she rested her like, you know, what? I don't get to testify? That's a pretty significant record. And then we have to review that through the lens of a deep bus. How is that an unreasonable interpretation of the record or application of the standards to the record the trial court made? Because I would actually say that this being the third trial muddies the water much more than it clarifies the water. In that, in the first trial, Mr. Blackman decided to testify. In the second trial, counsel clearly told the court, we need to have a colloquy on this issue. And Mr. Blackman waived his right. Now we're in the third trial, in which Mr. Blackman was presumably expecting a colloquy, just as there was in the second trial. Alternatively, there was reason for him to assume that because he had waived it at the second trial, he may not have had the right to assert it, that it was waived in perpetuity. And so, yes, there could have been a way that one could look at it and have a narrow, focused viewpoint and conclude that, well, because he had been apprised of this right at the second trial, then he was aware that he had the right. However, the appraisal of the right at the second trial actually confused the issue much more for a defendant who was untrained in the law. Someone like myself or another attorney would understand that the waiver doesn't carry over, and that just because there was a colloquy doesn't mean there would need to be a colloquy again. But that is a lot to expect of a criminal defendant. I think those are good arguments if we were the Washington Court of Appeals or the Washington Supreme Court reviewing this in direct appeal. But where we have to apply the standards of the DEPA, I'm not sure it's unreasonable for the Washington courts not to have accepted these arguments. Well, I would say that the court accepted it without conducting any sort of further inquiry is the key issue. I think that it would not be necessarily unreasonable for the court to analyze the issue, conduct a hearing, and ask the counsel what happened or ask Mr. Blackman what happened. But in this case, the court refused to do that. The court concluded based on this record that was not clear that, frankly, I believe based on the one piece of evidence that we clearly have, which is Mr. Blackman's declaration that he was unaware that he had the right to make this decision for himself, that it was incumbent on the court to conduct some sort of inquiry, and that by not doing so, the court acted unreasonably. Well, we have more evidence than that. We actually have the record of the trial. As I recall, an hour or two before defense rested, there was a discussion with Mr. Blackman present with the judge where his counsel was trying to predict whether the case would end that day, and she says it depends whether or not Mr. Blackman chooses to testify. Now, he was there. He did. When can we make it that? I don't think that that is dispositive either in that he was still expecting there to be some sort of discussion. He was still expecting to be given that option to choose whether or not to testify. The other thing to keep in mind is that there are a lot of rights that are vested in a criminal defendant that he is not solely disposed to waive or assert on his own, such as the right to call witnesses or the right to cross-examine witnesses. The attorney has the choice to assert or waive that right that is the defendant's, and the defendant cannot get up and say, Your Honor, my counsel is doing this and I don't want my counsel to do that. So the mere fact that it was said that this is Mr. Blackman's right does not necessarily convey to the criminal defendant that he has the right to get up and make a scene in court and say, Your Honor, I don't understand why my counsel is resting. I wanted to testify. I think that is a lot to ask of a criminal defendant. But as I recall Washington law, there's no duty on the part of a trial judge to make that inquiry. In fact, there's some suggestion that it would be improper interference with the client-attorney relationship for a judge to try to inject herself into the decision whether or not a defendant chooses to testify. It is clear under the law of this court, at least, that a court does not have an independent duty to hold such a cause. That is true. However, that does not absolve anyone of the responsibility of making sure that the right is waived knowingly, intelligently, or involuntarily. The counsel can waive the right on behalf of the defendant, and the court can accept it without having a cause. However, that does not make the right. Counsel, who made the mistake here? If the mistake is counsel's, why isn't this a Strickland claim? And if the mistake is the district court's, then you're going to be up against the precedent you just cited to us. No, because my point is that it's not that counsel can't waive the issue. My point is that it may not be a valid waiver. Okay. So who had the obligation to make the inquiry? I would say that ultimately it is the court's obligation before it accepts the waiver to ensure that that waiver has been knowing, intelligent, and voluntary. So a trial judge does have a responsibility, if defense counsel says, we rest your honor to inquire of the defendant whether he is knowingly and intelligently waiving his right to testify. The court needs to understand that it is being done knowingly, intelligently, and voluntarily. And how is it supposed to do that other than asking? I think the most simple way to do that would be to ask. Okay. And what Supreme Court case tells us that a trial judge has that obligation? There is none. The court does not have to ask. I'm saying that that would be the easiest way to do it. Presumably there would be other ways to do it if the court was somehow informed or the court could glean from what had happened that the client understood his right and was making a knowingly, intelligently, and voluntarily waiver. But if the court does not understand that the waiver is being made knowingly, intelligently, and voluntarily based on an abundance of what is present, then the court has to inquire. So there isn't an independent obligation to conduct an inquiry. But if the court doesn't know that the waiver is knowingly, intelligently, and voluntarily, it has to ascertain that fact. The only evidence that we have in the record here, counsel, is the trial judge saying that he was watching the defendant's reaction and that he didn't see any surprise on his face or disappointment or that he was upset that counsel was resting. Well, aside from the fact that that's a post hoc rationalization that happened months later that I question whether the court could seriously remember... Oh, sorry. Yeah, counsel, you're under AEDPA. You've got to give me a Supreme Court case that tells me that the district court was wrong here. What case tells me that the district court made the mistake? I don't think there's a Supreme Court case on that specific issue, but I think the interplay of the right and the client's right to assert that right is clearly established federal law, and I don't think that merely saying, I looked at him and he didn't jump up and make a scene in court is sufficient to make it a reasonable finding that he knowingly, voluntarily, and intelligently waived his right. All right. You have only about a minute left. You may want to save time for the button. Thank you, Your Honor. All right. We'll hear now from Mr. Sontag. May it please the court, my name is Volga Sontag, here to represent Respondent Utech. As we've just seen in the discussion that you had with opposing counsel, the dispositive question here in this case is really whether there is any clearly established federal law on how the waiver needs to happen. What we have is obviously Iraq v. Arkansas, and it says that there's a clearly established fundamental right that the defendant may testify. We also have Johnson v. Zirks stating that fundamental rights require a knowing, intelligent, voluntary waiver. But what we do not have is a case basically pulling these two strands together and fleshing it out so that we would see, okay, so the Supreme Court has clearly stated that in this case, the waiver should have first happened after a colloquy, either between the judge and the defendant, or between defense counsel and the defendant on the record. But we do not have this here. And that is the principal problem, and we see that reflected in the Washington State Supreme Court decision on this point. They decided to rock, but then right away went to Ninth Circuit's case law in the two decisions that decided there, State v. Thomas and State v. Robinson, which ultimately relied on U.S. v. Martinez, this court's presidential case on the issue of waiver. And that really answers this positive point on this question. Under AEDPA, because we do not have clearly established federal law on point, the Washington State Supreme Court's decision of this matter could not have been an unreasonable application of or contrary to clearly established federal law. Can I just ask a question about the record that wasn't clear to me? What's the first point at which this issue was raised? Because it's one thing for him to stand up in front of the jury, oh my gosh, she just rested. Was it when it raised at a break, was it raised only in a post-verdict motion? When did it first come up in the trial? Your Honor, it was first raised in a post-verdict motion for a new trial that new counsel presented to the trial court, and that the trial court then addressed at the beginning of the sentencing hearing. Mr. Blackman made no indication during the trial, certainly none before the verdict, that he wanted to talk and that he wanted to testify. In fact, there is even one instance and the court of appeals refers to it where the judge directly spoke to Mr. Blackman during the jury instruction phase. And Mr. Blackman made no indication that he wanted to testify. And again, under this circuit's precedent, U.S. v. Pino Noriega, that is positive as well, because there in Pino Noriega, the defendant waited too long. He waited until after the verdict had been reached and then raised the issue of not having, you know, really waived his right to trial and this court has said that is too late to do that. Is there anything in the record about the trial counsel? He never submitted a declaration. The trial counsel was never heard from on this issue. Well, interestingly, Your Honor, trial counsel did submit a declaration with the motion for a, a new trial. But in that declaration, she only addressed the issue of the eliminate order and, and the issue of, and the issue of prior testimony that is at the lower docket 32, that's basically the habeas petition exhibit six at pages 34 to 35. At that point, it would have been a great opportunity for a defense counsel, former defense counsel to, you know, put on the record what she did and what she didn't do. But for some reason she declined or it was not requested. So at this point, we then only have Mr. Blackman's declaration beginning with the motion for a new trial, but also in his collateral attack where he basically said, we vigorously debated the issue every day of the trial, which already goes to show that he knew that he had the right to testify. But then I was surprised when counsel rested. So that is all we have in terms of testimony and directly, so to speak, or evidence from the two parties involved here. But as was mentioned to buy a judge by me, this maybe could have been a Strickland claim, but it was not presented as a Strickland claim. It was presented certainly on habeas review on the rocky Arkansas, under this circuit precedent, and then attempting to extend not just Supreme court precedent, but also this court's precedent to require some type of colloquy on the record. And as you just cause pointed out on your end pod, that is simply not the standard that this court should apply. And again, to highlight the fact that there was a factual findings by the trial court directly observing him being present, obviously during the, during the colloquy, during the second trial and interacting with Mr. Blackman, even after defense counsel rested, but never a word, never a reaction until the verdict came back unfavorable to him. And then the motion for him. Unless you have any more questions on this point, I will rely on our briefings and ask the court to affirm the district court's judgment on this point. Thank you very much. All right. Thank you. All right, Mr. Yes. I would just say that, that again, I do not believe that our argument is trying to extend any sort of right. The criminal defendant has the right to testify. Has that singular authority decided to invoke that right? And any implication has any failure to invoke it has to be knowing and intelligent and voluntary. The same would happen if say for instance, the defendant was under duress and was forced not to testify by someone threatening him. If subsequently came out that he hadn't made a voluntary waiver, then the waiver is invalid. Isn't there a declaration from counsel saying that, you know, he had told me that he wanted to testify. And I messed up that I'm not sure of that. That would have been conducted before I got involved in the case under pinholster. I can't be involved in add new evidence regarding that issue. So I was with, I was dealing with the record that I had, but I believe that the record is clear that, that the court had some obligation to assure itself that Mr. Blackman's waiver was knowing, intelligent, voluntary, didn't do so. And therefore I believe this case should be reversed and remanded. Thank you counsel. The case just argued be submitted. And we'll take a five minute recess before hearing the last cases.
judges: Bybee, Stearns, Collins